UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X
UNITED STATES OF AMERICA 20-CR-79(V)

vs.

Buffalo, New York
DEYANNA DAVIS, June 26, 2020
Defendant.
- - - - - - - - - - - - - - X

TRANSCRIPT OF VIDEO PROCEEDINGS
BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
UNITED STATES MAGISTRATE JUDGE

JAMES P. KENNEDY, JR., ESQ.
United States Attorney
BY: SETH T. MOLISANI, ESQ.
Assistant United States Attorney
138 Delaware Avenue
Buffalo, New York 14202

DOLCE PANEPINTO, PC
BY: SAMUEL P. DAVIS, ESQ.
1260 Delaware Avenue
Buffalo, New York 14209
Appearing on behalf of the Defendant

ALSO PRESENT: Curtis Middlebrooks, U.S. Probation Office

AUDIO RECORDER: Joanna Dickinson

TRANSCRIBER: Christi A. Macri, FAPR-CRR-RMR-CSR(CA/NY)
(585) 613-4310
Kenneth B. Keating Federal Building
100 State Street, Room 2120
Rochester, New York 14614

(Proceedings recorded by electronic sound recording, transcript produced by computer).

**P R O C E E D I N G S**

* * *

(**WHEREUPON**, the defendant is present).

**THE CLERK:** We are on the record in criminal proceeding No. 20-CR-79, United States vs. Deyanna Davis. This is on for a video conference. We're here for a continued detention hearing.

The defendant is present with attorney Sam Davis.

For the Government AUSA Seth Molisani.

From the United States Probation Office Curtis Middlebrooks.

The Honorable Jeremiah J. McCarthy presiding.

**MAGISTRATE JUDGE MCCARTHY:** Good morning, everyone.

**MR. DAVIS:** Good morning, Your Honor.

**MAGISTRATE JUDGE MCCARTHY:** Ms. Davis, can you see and hear me?

**THE DEFENDANT:** Yes.

**MAGISTRATE JUDGE MCCARTHY:** All right, thank you. Before we proceed I want everybody to reconfirm that we agree to proceed by video conference rather than in person due to the COVID-19 pandemic; is that correct?

**MR. DAVIS:** Yes, Your Honor, on behalf of Ms. Davis -- Mrs. Davis.

**MR. MOLISANI:** Yes, Your Honor.

**MAGISTRATE JUDGE MCCARTHY:** Okay, thank you.

And I want to remind everyone that there is to be no recording of these proceedings and that's per Chief Judge Geraci's June 15th General Order.

All right, we had left off with Mr. Davis' presentation and, Mr. Davis, we had not gotten yet to a discussion of specific conditions of release that you might be proposing, but at my request you did file an affidavit yesterday updating me as to what occurred at the felony hearing in state court.

Could you briefly summarize what transpired?

**MR. DAVIS:** Yes, Your Honor. And good morning again. At the felony hearing evidence was presented with regard to the state allegations. There was an additional charge lodged against my client for attempted murder. The State also moved to have the bail amount increased to half a million dollars.

After vetting the presentation by the State, the judge saw fit to not only leave the bail at $200,000, but to add two additional forms of bail to afford my client the ability to post bond in two different ways: A signature bond and also a surety bond, and they did not -- the Court did not raise the bail to half a million dollars, and it was held for action to the grand jury.

**MAGISTRATE JUDGE MCCARTHY:** All right. Now, who were the signators on the bonds in state court?

**MR. DAVIS:** Now, Judge, we haven't -- we haven't taken out those bonds just yet. Family wanted to see what this Court would ask for in terms of bond.

It's going to be my client's grandmother, who is also on the line, as well as her mother. If you look at the screen you'll see the name Ayanna. I believe that's my client's grandmother there.

**MAGISTRATE JUDGE MCCARTHY:** Yes, I do see her.

**MR. DAVIS:** And they are going to be acting as sureties. And that's my client's mother there. They'll be acting as sureties.

**MAGISTRATE JUDGE MCCARTHY:** All right. Before we get back to them, I have a couple of additional questions regarding the bail report and some statements made in the bail report.

You have that, correct, Mr. Davis?

**MR. DAVIS:** Yes, Your Honor.

**MAGISTRATE JUDGE MCCARTHY:** All right. According to the bail report, Ms. Davis denied any history of illicit substance use, but the Government's proffer indicates that various types of illicit drugs were detected.

Can you speak to that?

**MR. DAVIS:** Judge, it's my understanding that my client may have consumed a pill on that evening that had multiple substances in it. I'm not sure of the quality of the

conversation that was had between my client and Pretrial Services; I wasn't -- obviously, I wasn't -- I don't believe I was a party to that conversation. I don't really recall that. But there may have been -- I don't believe my client purposely made any misrepresentations.

I'd like the Court also to realize that my client has been wounded; she was shot I believe two times, so she -- she may or may not have heard them correctly.

My client, she has had some issues with substance abuse, but I believe that's something that can be remedied if it is an issue for --

**MAGISTRATE JUDGE MCCARTHY:** Mr. Middlebrooks, can you hear me, sir? Mr. Middlebrooks? Curtis?

**MR. MOLISANI:** He's muted, Your Honor.

**MAGISTRATE JUDGE MCCARTHY:** Have you unmuted now?

**MR. MIDDLEBROOKS:** Yes.

**MAGISTRATE JUDGE MCCARTHY:** You conducted the Pretrial Services interview, correct?

**MR. MIDDLEBROOKS:** I did, Judge.

**MAGISTRATE JUDGE MCCARTHY:** How did Ms. Davis appear to you at that time? Was she coherent?

**MR. MIDDLEBROOKS:** She was, Judge.

**MAGISTRATE JUDGE MCCARTHY:** All right. What did she tell you about history of illicit substance use?

**MR. MIDDLEBROOKS:** Judge, the line of questioning

started with has she ever used alcohol. She advised that she had.

I asked her specifics as far as the age when she first began consuming alcohol, the last use and how often she used. She answered all those questions.

I asked if she was -- if she used any narcotic drugs. She said no. I asked if she had ever used any narcotic drugs, and she again said no.

From there I asked --

**MAGISTRATE JUDGE MCCARTHY:** Did she appear confused at all during that line of questioning?

**MR. MIDDLEBROOKS:** No, Judge.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MR. MIDDLEBROOKS:** Then from there I asked if she had ever engaged in substance abuse treatment, and she advised that she has but that it was for alcohol in 2013 or '14.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MR. MIDDLEBROOKS:** That's all indicated in the bail report.

**MAGISTRATE JUDGE MCCARTHY:** All right, thank you.

**MR. DAVIS:** Your Honor, if I might? Was the interview conducted via video or just over the telephone? I'm not sure.

**MR. MIDDLEBROOKS:** Over the phone.

**MR. DAVIS:** Oh, so there was no visual of my client

when this conversation was had?

**MR. MIDDLEBROOKS:** That's correct.

**MR. DAVIS:** Okay. Because, Your Honor, you did ask if she appeared to be confused, but he wasn't able to see her so he could only --

**MR. MIDDLEBROOKS:** Judge, she made no statements that she was confused or didn't understand the line of questioning and that is why I answered the way I did to Your Honor's question.

**MAGISTRATE JUDGE MCCARTHY:** Okay, all right, thank you.

Mr. Davis, as I've indicated, I have not yet -- I told you yesterday to be prepared to propose specific conditions of release, but I indicated that I have not yet made a decision. I'm close to doing so, but I want to hear specifically what you are proposing.

**MR. DAVIS:** Judge, I'm asking that she be released to her own home. She does have four young children. Her husband is there to help her.

In addition, she has a strong support network. Her mother and her grandmother are, you know, very close to her.

I need for her to treat with her primary care physician as well, Judge. She does have -- there's, I believe, potentially a danger for infection and she'd like to have her wounds tended to by her own doctor.

If ankle -- if electronic monitoring system is something that the Court would entertain, that is also something that we would ask for. That way the Court would have assurances as to her whereabouts. She would only be leaving the house to, you know, for her medical issues, issues related to her children and to meet with myself.

So I'm asking that she be released using the EMS system if the Court sees fit.

**MAGISTRATE JUDGE MCCARTHY:** All right. Now, in terms of security for any bond that might be posted, how much cash or property is going to be posted by family members in state court to secure her release?

**MR. DAVIS:** Well, Judge, if they use the E-Signature bond, they have to put down I believe $20,000, which they will get back in total if -- if my client -- when my client prevails.

Should my client not prevail or take some sort of plea, I believe the courts will keep 3% of that, but they will get the brunt of that money back.

If they choose to use a surety bond, they will have to come up with about $12,000, which I believe they may have access to in my conversations with them, but they're looking at $12,000 which they will not get back if they use the surety bond option.

**MAGISTRATE JUDGE MCCARTHY:** Who would be the source

of that money?

**MR. DAVIS:** I believe it's going to come from my client's mother or my client's grandmother or a combination of the two; plus my client's father who works for the NFTA is also contributing. But it's a family effort, Your Honor.

**MAGISTRATE JUDGE MCCARTHY:** Okay. Is her father available today as well?

**MR. DAVIS:** I believe he starts his shift at 11:15. He may be on the line right now, Judge, but he does drive for the NFTA and he told me this morning his shift starts at 11:15.

**MAGISTRATE JUDGE MCCARTHY:** All right. Well, we're pretty close to that so...so those are the conditions of release that you are proposing?

**MR. DAVIS:** Yes, Your Honor.

**MAGISTRATE JUDGE MCCARTHY:** Mr. Molisani, you wish to respond briefly?

**MR. MOLISANI:** Your Honor, it remains the Government's position that no conditions or combination of conditions can assure the defendant's return to court and the safety of the community.

I join the Probation Department in seeking detention.

**MAGISTRATE JUDGE MCCARTHY:** Well, Mr. Molisani, to the best of my recollection, your proffer did not make any

reference to risk of flight. Your proffer was based solely on danger to the community.

**MR. MOLISANI:** Well, Your Honor, I think the defendant's actions in this case reflect her danger with respect to flight.

I understand that her prior bench warrant from 2009, I believe it was, is somewhat remote, but in this very case she fled from police. And so that -- that's an indication of whether or not that sort of behavior, you know, is consistent with -- with the way she operates.

And so it's a weaker argument, I understand that, and danger is the primary basis for the Government seeking detention, but I think there's also a basis for flight as well based on the conduct involved in this case and the prior bench warrant.

**MR. DAVIS:** Your Honor, if I might respond to that?

**MAGISTRATE JUDGE MCCARTHY:** Yes.

**MR. DAVIS:** Your Honor, during the felony hearing there was testimony that my client's vehicle was fully operational at the point where it was stopped. It's my understanding that once the individual whose fingerprints -- whose DNA -- strike that.

Whose DNA was found on the weapon alighted from the vehicle. That the vehicle came to a complete stop. The vehicle at all times was able to proceed. The tires were

intact, the engine was intact, there was gas in the car, the car was running. My client stopped the car when the third individual alighted from the vehicle. So my client was not, in fact, running from police.

Also, there was testimony -- well, strike that.

No one's able to say when exactly my client was shot, but the first officer to make contact with my client did say on the record when asked -- when he asked my client why did she drive toward the line, she replied that she had been shot.

So for counsel to impute that my client meant to escape from police is -- there's nothing -- there's nothing to support that statement, Your Honor.

**MR. MOLISANI:** Aside from the video, Your Honor, which shows her strike the police line, run over an officer and then continue driving. She doesn't pull over and stop after striking the officer. She flees at a high rate of speed, turns off to a side street rather than continuing on Bailey Avenue, and attempts to escape.

**MR. DAVIS:** And, once again, Your Honor, that video does not show the tear gas canisters which were discharged. There are several videos in the public -- the public arena, Your Honor, which you can -- which the Government has access to, by the way, which show the low visibility on that street, which show that there were several ordnances discharging in

that area.

My client drove -- and there's also, if we do look at the video, we will see that there were several vehicles clogging any -- all of the ways in which my client would have had to have driven to get out of that area. My client drove toward smoke after being fired upon, after hearing gun powder discharged.

My client drove -- it's still not clear what happened inside that vehicle, whether or not my client was under duress or not. We're not speaking to that issue right now, but we do know, once again, that there was a spent shell casing in my client's car. We do know that my client was shot twice. No one can tell me who shot my client. No one can tell me when my client was shot --

**MR. MOLISANI:** Your Honor, that's not accurate. During the Government's proffer we showed evidence relative to the way the vehicle was struck by gunfire. There were four shots from State Police at the police line and the evidence was consistent with her vehicle being fired upon at the time that she struck the officers.

**MR. DAVIS:** Your Honor, the People -- the Government showed you two strings going through a vehicle. However, the State, who actually conducted the investigation, was unable to say who actually shot -- people on scene were unable to say who actually shot and they were also unable to account for any

other projectiles besides bullets.

The State tracked where bullets came from. The State did not tell us anything about the bean bags that were fired, the pepper balls that were fired, and many other ordnances that were discharged in the area.

The State can only -- the State can only tell us about two bullets that were fired when there were several shots fired. The State cannot tell you and the Government cannot tell you whether or not a round was discharged in that vehicle, but we do know that there was a spent shell casing in the car.

By all accounts there were several shots fired in short succession right around the time my client pulled off.

**MR. MOLISANI:** Your Honor, this is --

**MAGISTRATE JUDGE MCCARTHY:** All right, counsel, counsel, we've been at this for two days. I think I've heard enough from both of you. I'm going to announce my decision and I will write on this, so there will be a written decision issued in due course.

Let me begin by saying that I have great sympathy for the law enforcement officers who were injured in this incident on June 1st, and I wish them all a speedy recovery.

But the issue before me is whether the Government has carried its burden of showing by clear and convincing evidence that there is no condition or combination of

conditions which would reasonably assure me that if released, this defendant would not pose a risk of danger to the community.

As I indicated before, the Government did not move for detention based on risk of flight. The Government also has conceded that this is not a situation in which the nature of the charges give rise to a presumption in favor of detention.

Therefore, it's the Government's obligation to satisfy me by clear and convincing evidence that there is no condition or no combination of conditions that would allow her release. And that requires proof with a high degree of certainty, although not beyond a reasonable doubt.

I have considered all of the factors under the Bail Reform Act, specifically under Title 18, U.S. Code, Section 3142(g). First being the nature and circumstances of the charge in this case, I've carefully reviewed the videos, I've carefully considered counsel's arguments with respect to the videos.

It is unclear to me other than -- what is clear is that the SUV struck the law enforcement officers and proceeded down Bailey Avenue and then turned, I believe, onto Connelly Street. But I tend to agree with Mr. Davis that I don't know at this point what was going on inside that car.

What appears to me to be clear is that Mr. Pigram

was the one who was in possession of the firearm and fired the shots. He's also the one who left the car shortly thereafter and escaped and was apprehended by law enforcement.

I'm not questioning at this point whether or not there's probable cause for the federal charge against Ms. Davis, namely, being a felon in possession of a firearm.

I recognize the case that the Government has cited, the *Speer* case, which says there can be constructive possession in favor of someone who is in control of the vehicle in which the firearm is found.

Nevertheless, I think what has been shown is that in terms of actual possession of the firearm, it was Mr. Pigram, not Ms. Davis.

I don't know again what happened inside that car, whether she was pressured in some way to drive through the police line by Mr. Pigram or by the circumstances; or whether she made the decision to do so on her own.

But it is the Government's burden in this case and I find that the Government has not carried that burden of clear and convincing evidence to show that Ms. Davis' actions were deliberate.

Moreover, much of the Government's proffer had to do with the state charges. The only federal charge in front of me is the possession of the firearm.

Now, while I can certainly consider and have

considered danger in terms of the entire incident, I'm focusing on the possession charge, there is some evidence which would support a possession charge against her. I don't consider that evidence thus far at least to be particularly strong.

However, her guilt or innocence will be determined at a later date and at this point she is presumed innocent of the charges.

But with that I have addressed both the nature of the -- and circumstances of the offense charged, and the second factor, the weight of the evidence against the defendant, which I don't find to be particularly compelling.

I am troubled by the third factor, defendant's history and characteristics both in terms of her truthfulness. It seems to me that she may have misrepresented whether she had engaged in any illicit substance use other than consumption of alcohol when she was interviewed by Pretrial Services.

She also told Pretrial Services that she's been unemployed since she was 17 years old. However, the submissions by Mr. Davis from family members indicate that she is employed, self-employed. I don't buy the explanation that she was being truthful when she said she was unemployed because she was self-employed.

I'm also concerned by her criminal history, namely,

that in 2009 she pled guilty to attempted robbery second. In 2013 she was convicted of attempted tampering with a witness and attempted intimidation of a witness. Those factors do concern me. However, those are several years ago.

The Bail Reform Act requires that I look toward the future and focus on whether there are conditions that going forward, irrespective of what happened in the past, will reasonably assure me -- not guarantee, but reasonably assure me that if released she will not pose a risk of flight -- excuse me, a danger to the community. I need not consider the risk of flight factor because that hasn't been argued by the Government.

The final factor is the nature and seriousness of the danger to a person which -- or the community that would be posed by the defendant's release. As indicated, I don't find the evidence to be very strong that she would pose a danger to the community by virtue of the possession of a firearm count because I don't see the evidence being strong against her on that count. Whether or not there is probable cause for the count, I do not question at this time.

The Government's proffer suggests some type of danger by virtue of the fact that she ran over the law enforcement officers. I have considered that, but, again, as I indicated, I don't -- I'm not convinced it was a voluntary decision on her part.

Therefore, I believe that there are conditions of release which will reasonably assure me that if released she will not pose a danger to the community, and in that regard I am deferring somewhat to the state court judge who has set conditions of bail in that case because she is perhaps more familiar with the details of those charges than I am from the proffer here.

I'm going to require as a condition of her release that she comply with all conditions of release which are set in state court.

In addition, I am going to require that her mother, her grandmother, and her father each execute a signature bond in the amount of $25,000. I'm going to question them on that shortly.

And I want them to understand, I believe the mother and grandmother are listening in now, that that is entirely up to them whether they do so. They do not have to do so. But if they sign a signature bond, they are undertaking a substantial risk that if she violates the conditions of her release, they will be liable for that amount.

In addition, I am not requiring that any property or collateral be posted as security because that's going to be required upon release in state court. So obviously her release from me would be conditioned on her release in state court, and I've already indicated that she will be required to

comply not only with the conditions of release that I impose, but the conditions of release that are imposed by state court.

I will allow her to return to her home with her husband and that is at 592 Minnesota Avenue, Buffalo, 14215; is that correct, Mr. Davis?

**MR. DAVIS:** Yes, Your Honor, I believe that's correct.

**MAGISTRATE JUDGE MCCARTHY:** All right. Now, one thing I forgot to mention, which is also a source of some concern for me, that there was a recently expired Order of Protection in favor of her husband; is that correct? That's expired, but I don't -- my understanding is the domestic situation is calm right now; is that correct, Mr. Davis?

**MR. DAVIS:** That's correct, Your Honor.

**MAGISTRATE JUDGE MCCARTHY:** All right. I want to -- I want to warn Ms. Davis that there are to be no more domestic incidents.

She will be released to a -- not home incarceration. She will be allowed to leave the home for purposes of medical treatment for herself, for her children, and for purposes of consultation with Mr. Davis on this case, but otherwise she is to remain in the home.

She will be subject to electronic monitoring . Is there a land line in the home, Mr. Davis?

**MR. DAVIS:** I'm not certain of that, Judge, but you

know that we can make that happen in short order.

**MAGISTRATE JUDGE MCCARTHY:** All right.

**MR. MIDDLEBROOKS:** If I may?

**MAGISTRATE JUDGE MCCARTHY:** Yes, Mr. Middlebrooks.

**MR. MIDDLEBROOKS:** Home incarceration would allow the defendant out for medical treatment and to meet with her attorney.

**MAGISTRATE JUDGE MCCARTHY:** All right, then I'll impose that condition.

Mr. Middlebrooks, are there other conditions of release in addition to those that I have covered thus far that you would recommend? And I recognize for the record that not only the Government, but Pretrial Services does oppose Ms. Davis' release.

**MR. MIDDLEBROOKS:** Thank you, Judge. We would recommend that defendant avoid all contact with co-defendants and defendants in any related cases.

That she refrain from possessing any firearms, destructive devices or dangerous weapons.

That she not consume any alcohol at all.

That she not have or possess any narcotic drugs unless prescribed to her by a physician.

That she participate in inpatient or outpatient substance abuse treatment if deemed necessary.

That she refrain from doing anything to obstruct or

tamper with the testing.

And then the Court already mentioned the home incarceration.

**MAGISTRATE JUDGE MCCARTHY:** Mr. Molisani, are there any additional conditions of release that you would recommend?

**MR. MOLISANI:** No, Your Honor. The Government defers to Probation.

**MAGISTRATE JUDGE MCCARTHY:** All right. Mr. Davis, are those conditions of release acceptable to you?

**MR. DAVIS:** Yes, Your Honor. If there are any change in circumstances I will petition the Court to modify the conditions if necessary.

**MAGISTRATE JUDGE MCCARTHY:** Okay. All right, Ms. Davis, you have heard the conditions of release that I'm going to impose. Do you understand all of those?

**THE DEFENDANT:** I do.

**MAGISTRATE JUDGE MCCARTHY:** Do you understand that violating any of the conditions of release may cause your release to be revoked, but in addition to that, you may place your mother (distorted audio).

**THE DEFENDANT:** Yes.

**MAGISTRATE JUDGE MCCARTHY:** And you won't let that happen, correct?

**THE DEFENDANT:** Correct.

**MAGISTRATE JUDGE MCCARTHY:** All right. Now, I'd like

to question both her mother and her grandmother and then, Mr. Davis, I'm going to have to question her father at a different time. You'll have to arrange that with me, okay?

**MR. DAVIS:** Yes, sir.

**MR. MIDDLEBROOKS:** Judge, if I can interject one more time?

**MAGISTRATE JUDGE MCCARTHY:** Yes.

**MR. MIDDLEBROOKS:** I was just reviewing the bail report again and there were some questions that we have regarding the defendant's mental health. So we would also recommend that she submit to a mental health evaluation and/or treatment if deemed necessary.

**MAGISTRATE JUDGE MCCARTHY:** Yes, I'm glad you reminded me of that because I overlooked that as well. That will be a condition of her release.

All right, both identify yourselves, please. Ma'am, your name, please?

**AYANNA CARR:** Ayanna -- are you speaking to me, Your Honor? I'm sorry. Her mother.

**MAGISTRATE JUDGE MCCARTHY:** I am speaking to you. Could you state your name, please?

**AYANNA CARR:** Yes, Ayanna Carr, C-A-R-R.

**MAGISTRATE JUDGE MCCARTHY:** All right. And are you the defendant's mother?

**AYANNA CARR:** Yes.

**MAGISTRATE JUDGE MCCARTHY:** All right. And you've been listening to this proceeding, correct?

**AYANNA CARR:** Correct.

**MAGISTRATE JUDGE MCCARTHY:** You've heard the conditions of release that I am imposing?

**AYANNA CARR:** Yes, but we're breaking up a little bit. I can't really hear you. We're breaking up again. I heard you ask me am I -- am I certain about the conditions of release. If you said that, yes.

**MAGISTRATE JUDGE MCCARTHY:** Okay. And do you understand, ma'am, that one of the conditions is that I am asking you, Ms. Davis' father, and her grandmother each to execute a signature bond in the amount of $25,000.

Do you understand that?

**AYANNA CARR:** Yes. May I make -- may I just say one thing, Your Honor? This is -- this is Ms. Davis' great-grandmother, which is my grandmother. That's her great-grandmother, not her grandmother. It's her great-grandmother.

**MAGISTRATE JUDGE MCCARTHY:** All right. Well, I'll speak to her in a moment then.

**AYANNA CARR:** Okay.

**MAGISTRATE JUDGE MCCARTHY:** Now, do you understand, ma'am, that you do not have to sign this bond, but that if you decide to do so you are undertaking a substantial financial

risk if she (distorted audio).

Did you hear what I said?

**AYANNA CARR:** Yes.

**MAGISTRATE JUDGE MCCARTHY:** And you understand you are taking a risk if you do so?

**AYANNA CARR:** Yes, sir.

**MAGISTRATE JUDGE MCCARTHY:** Are you willing to do that?

**AYANNA CARR:** Yes, Your Honor.

**MAGISTRATE JUDGE MCCARTHY:** All right. Are you employed, ma'am?

**AYANNA CARR:** Yes.

**MAGISTRATE JUDGE MCCARTHY:** And where do you work?

**AYANNA CARR:** Amazon, 4201 Walden Avenue, Lancaster, New York.

**MAGISTRATE JUDGE MCCARTHY:** Okay, approximately how much do you earn per month?

**AYANNA CARR:** Close to -- with or without over time -- almost 3,000 a month.

**MAGISTRATE JUDGE MCCARTHY:** Okay, thank you.

Now, may I speak to her great-grandmother? Good morning, ma'am. Can you hear me?

**JANELLE WOODS:** I can barely hear you.

**AYANNA CARR:** She can hear you, but she's a little hard of hearing so I'm going to tell her what you're saying.

**MAGISTRATE JUDGE MCCARTHY:** Okay. Ma'am, could you state your name, please?

**JANELLE WOODS:** Janelle Woods.

**MAGISTRATE JUDGE MCCARTHY:** And you are the defendant's great-grandmother?

**JANELLE WOODS:** Yes, I am.

**MAGISTRATE JUDGE MCCARTHY:** You understand, ma'am, that the condition of her release I will require you to sign a signature bond in the amount of $25,000.

Do you understand that?

**JANELLE WOODS:** Yes.

**MAGISTRATE JUDGE MCCARTHY:** That's a risk to you if you sign it. You don't have to sign it, but if she violates conditions of her release, you may be liable for that amount. Do you understand?

**JANELLE WOODS:** I understand.

**MAGISTRATE JUDGE MCCARTHY:** All right. I take it, ma'am, you -- well, unless you tell me to the contrary, you are not currently employed, are you?

**JANELLE WOODS:** No, I'm 84 years old.

**MAGISTRATE JUDGE MCCARTHY:** Okay, well, good for you. But do you have any property, ma'am?

**JANELLE WOODS:** Yes, I do.

**MAGISTRATE JUDGE MCCARTHY:** All right. What type of property do you have? I'm not going to ask you specifically,

but in general what type of property do you have?

**JANELLE WOODS:** I have a double occupancy home.

**MAGISTRATE JUDGE MCCARTHY:** Okay. And you own that?

**JANELLE WOODS:** Yes, I do.

**MAGISTRATE JUDGE MCCARTHY:** All right. And you're willing to sign this bond on her behalf, correct?

**JANELLE WOODS:** Yes.

**MAGISTRATE JUDGE MCCARTHY:** All right. Now, Mr. Davis, I'm going to leave it to you to get the bonds -- we'll get the bonds to you, you can see to their execution and return, okay?

**MR. DAVIS:** Yes, Your Honor, as soon as I receive them I'll take them to the family.

**MAGISTRATE JUDGE MCCARTHY:** Right. And then also again I'm going to -- you're going to have to set up with me a time to speak to Ms. Davis' father so that I can make sure that he's willing to sign the bond as well.

**MR. DAVIS:** Yes, sir, I'll make that happen today.

**MAGISTRATE JUDGE MCCARTHY:** All right. Well, you can get back to me on that.

Now, I -- I recognize that I could set more stringent conditions of release, but under the Bail Reform Act I'm obligated to set the least restrictive conditions of release and given what's being asked by the state court, coupled with the conditions that I am imposing, I find those

to be sufficient.

Mr. Molisani, there you are, if the Government intends to seek a stay of my ruling, I will stay its effectiveness until close of business on Tuesday so that you can obtain a stay if that's your -- your desire. If you do not obtain a stay, not merely apply for one, if you do not obtain a stay by that time then Ms. Davis will be released as far as I'm concerned. Whether she's released stateside is up to them.

The only other thing I wish to address today with Mr. Davis is that we had set a scheduling order as to the co-defendants. Are you aware of that?

**MR. DAVIS:** Yes, Your Honor, I did see that in the system.

**MAGISTRATE JUDGE MCCARTHY:** All right. Do you agree that the same dates may be imposed as to your client?

**MR. DAVIS:** Yes, Your Honor, those dates are good with us.

**MAGISTRATE JUDGE MCCARTHY:** All right. Is there anything else I need to address today?

**MR. MIDDLEBROOKS:** Yes, Judge.

**MAGISTRATE JUDGE MCCARTHY:** Yes, Mr. Middlebrooks.

**MR. MIDDLEBROOKS:** As far as the defendant's release goes, our office will not do the home inspection until the bond is posted and the issue is resolved in the local matter.

**MAGISTRATE JUDGE MCCARTHY:** What matter?

**MR. MIDDLEBROOKS:** The local matter. If she's still held on the city charges, and she's not going to be held here, there's no need for our office to go out until that is resolved as well.

**MAGISTRATE JUDGE MCCARTHY:** All right. Well, that's going to be up to Mr. Davis then to get that resolved.

**MR. MIDDLEBROOKS:** I just wanted the Court to be aware of that.

**MAGISTRATE JUDGE MCCARTHY:** In general, I'm staying my release until the earlier of -- or excuse me, the later of close of business on Tuesday, June 30th; or satisfaction of all the conditions of release, including inspection of the premises, et cetera, okay?

**MR. MOLISANI:** Your Honor, I just wanted to address a couple things.

**MAGISTRATE JUDGE MCCARTHY:** Yes.

**MR. MOLISANI:** I understand that the Court has given us until the close of business on Tuesday. The Government was going to request that you stay the proceedings for one week. I understand that you've only stayed them until Tuesday.

I'm also -- I just wanted to make clear for the record when you laid out the scheduling order, motions are due on August 17th, 2020. The Government is moving for the exclusion of time between today's date and that date pursuant

to the Speedy Trial Act, in particular Section 3161(h)(7)(A) and (h)(7)(B)(iv), and that this time will be utilized for the Government to provide defense counsel with discovery, discuss potential pretrial resolution of this matter, to afford the defendant adequate opportunity to review those materials with her attorney and discuss any potential plea offer in this case, to ensure that the defendant receives effective assistance of counsel and continuity of counsel.

And in light of those things, Your Honor, it's the Government's position that the interest of justice outweigh the interest of the defendant and the public in a speedy trial and so that time should be excluded.

**MAGISTRATE JUDGE MCCARTHY:** All right, thank you. Mr. Davis, you agree to the exclusion?

**MR. DAVIS:** Yes, Your Honor.

**MAGISTRATE JUDGE MCCARTHY:** All right, now with respect to your request for a week stay, Mr. Molisani, as I said, I am going to issue a written decision hopefully today. I think by close of business on Tuesday if a district judge decides to stay the release, he or she will do so, but I don't find that a week is necessary. So those will be the conditions going forward.

Anything further today, counsel?

**MR. MOLISANI:** No, Your Honor.

**MR. DAVIS:** No, Your Honor.

**MAGISTRATE JUDGE MCCARTHY:** All right, thank you, all.

**MR. MOLISANI:** Thank you, Judge.

**MR. DAVIS:** Thank you.

(**WHEREUPON**, proceedings adjourned).

* * *

**CERTIFICATE OF TRANSCRIBER**

In accordance with 28, U.S.C., 753(b), I certify that this is a true and correct record of proceedings from the official electronic sound recording of the proceedings in the United States District Court for the Western District of New York before the Honorable Jeremiah J. McCarthy on June 26th, 2020.

S/ Christi A. Macri

Christi A. Macri, FAPR-RMR-CRR-CSR(CA/NY)
Official Court Reporter