IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.                                                          20-CR-79-A

WALTER STEWART,

Defendant.

---

## PLEA AGREEMENT

The defendant, **WALTER STEWART**, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

## I.    THE PLEA AND POSSIBLE SENTENCE

1.    The defendant agrees to plead guilty to Count 2 of the Superseding Indictment, which charges a violation of Title 18, United States Code, Section 922(g)(1) (felon in possession of a firearm and ammunition), for which the maximum possible sentence is a term of imprisonment of 10 years, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of 3 years.    The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2.      The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 2 years, without credit for time previously served on supervised release.   As a consequence, in the event that the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II.      ELEMENTS AND FACTUAL BASIS

3.      The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

   a.      that the defendant knowingly possessed a firearm and ammunition, as charged in the Superseding Indictment;

   b.      that at the time the defendant possessed the firearm and/or ammunition, the defendant had previously been convicted of a crime punishable by imprisonment for a term exceeding one year;

   c.      that at the time the defendant possessed the firearm and/or ammunition, the defendant knew that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year; and,

   d.      that the possession of the firearm and/or ammunition was in or affecting interstate or foreign commerce.

## FACTUAL BASIS

4.      The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty, including relevant conduct:

a.    On or about April 5, 2020, while in the vicinity of 209 Burgard Place, Buffalo, New York, in the Western District of New York, the defendant, **WALTER STEWART**, knowing that he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, unlawfully did knowingly possess a firearm, namely: a Smith and Wesson, model SD9VE, semi-automatic 9mm Luger pistol, bearing serial number FYR4197; and ammunition, namely: four (4) .40 S&W caliber rounds labeled "WIN 40S&W"; four (4) .40 S&W caliber rounds labeled "•FC• 40 S&W"; one (1) 9mm LUGER caliber round labeled "FC 9MM LUGER"; two (2) 9mm LUGER caliber rounds labeled "WMA ⊕18"; two (2) 9mm LUGER caliber rounds labeled "F&S 9mm LUGER"; two (2) 9mm LUGER caliber rounds labeled "SPEER 9mm LUGER"; one 9mm LUGER caliber round labeled "BARNES 9mm LUGER +P"; two (2) 9mm LUGER caliber rounds labeled "WIN 9MM LUGER"; and one (1) 9mm LUGER caliber round labeled "•Tulammo 9mm LUGER".

b.    Specifically, on April 5, 2020, at approximately 2:30 p.m., **STEWART** and a co-defendant, along with another unidentified male, discharged the aforementioned Smith and Wesson pistol and the aforementioned ammunition as they approached the victim, identified herein as "M.J.", on Burgard Place.  M.J. was struck once in the left forearm which caused serious bodily injury and required treatment at the Erie County Medical Center.

c.    The Buffalo Police Department ("BPD") responded to the scene of the shooting and collected the spent ammunition described above and submitted same to the Erie County Central Police Services Laboratory ("CPS Lab") for analysis.  In addition, the BPD obtained video surveillance footage from the area of the scene depicting **STEWART**, a co-defendant, and the unidentified male participating in the shooting.

d.    Subsequently, on June 1, 2020, at approximately 10:00 p.m., **STEWART** and the co-defendant were passengers in a vehicle operated by another individual on Bailey Avenue in Buffalo, New York. At that time, members of the BPD and the New York State Police ("NYSP") were positioned in a line across Bailey Avenue in response to civil unrest. While the vehicle **STEWART** was a passenger in was parked stationary on Bailey Avenue facing northbound, a distance away from the civil unrest, the co-defendant discharged several rounds from the Smith and Wesson pistol into the ground or into the air while occupying the back seat of the vehicle. Following the shots discharged by the co-defendant, the operator of the vehicle drove northbound in the direction of the line of law enforcement, eventually striking and seriously injuring a NYSP trooper. The co-defendant did not direct the operator of the vehicle to drive towards or through the police line.

e.    After striking and injuring the NYSP trooper, the operator continued northbound, driving the vehicle away from the scene and turning onto Connelly Avenue. The operator brought the vehicle to a stop on Connelly Avenue, at which time the co-defendant exited the vehicle and fled on foot before being apprehended by BPD.

f.    The NYSP recovered the Smith and Wesson pistol from a vehicle occupied by **STEWART** and the co-defendant and submitted the firearm to the CPS Lab for DNA analysis. The CPS Lab concluded that the co-defendant's DNA profile could not be excluded from the mixture of DNA obtained from the firearm. **STEWART**'s DNA profile was excluded as a contributor from the mixture of DNA. The CPS Lab also conducted ballistics analysis comparing the Smith and Wesson pistol to fired 9mm cartridge casings recovered from the April 5, 2020, shooting on Burgard Place. The CPS Lab determined that the Smith and Wesson pistol fired the ammunition recovered at the Burgard Place crime scene. Law enforcement also determined the firearm had previously been reported as stolen.

g.    Subsequent to the June 1, 2020, incident, the Erie County Crime Analysis Center ("ECAC") identified social media accounts for **STEWART** and the co-defendant. The ECAC identified photographs on both social media accounts depicting **STEWART** and the co-defendant wearing distinctive clothing and footwear which was consistent with the clothing and footwear worn by the assailants in the April 5, 2020, surveillance footage.

h.    On June 24, 2020, law enforcement executed a search warrant at the co-defendant's residence, namely, 89 Peace Street, Buffalo, New York, authorizing the seizure of evidence related to the April 5, 2020, incident. Law enforcement located clothing in a closet and twenty-six (26) .40 S&W caliber rounds labeled "WIN 40 S&W" from a dresser drawer in the same room. In addition, law enforcement recovered footwear consistent with the social media photographs and April 5, 2020, surveillance footage. The .40 cal. ammunition recovered was the same manufacturer as the .40 cal. cartridge casings recovered from the April 5, 2020 shooting scene.

i.    **STEWART** admits that he and the co-defendant knowingly possessed and/or aided and abetted each other in the possession of the aforementioned Smith and Wesson pistol and the aforementioned ammunition recovered from Burgard Place on April 5, 2020.

j.    Previously, on or about July 24, 2012, in County Court, Erie County, New York, the defendant was convicted of a crime punishable by a term

of imprisonment exceeding one year, that is, Robbery–3rd Degree, for which the defendant received a sentence of twelve months.

k.    **STEWART** admits that on April 5, 2020, when he possessed the aforementioned Smith and Wesson pistol and ammunition relevant to the April 5, 2020, incident, **STEWART** knew of his prior conviction and the fact that the conviction was punishable by a term of imprisonment exceeding one year.

l.    The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") examined the firearm, namely, the Smith and Wesson pistol described above, and determined that the firearm was manufactured in the State of Connecticut. The ATF also examined the ammunition described above and determined that none of the items were manufactured in the State of New York. Therefore, the firearm and ammunition possessed in connection with the April 5, 2020, incident traveled in and affected interstate commerce prior to being recovered in the State of New York.

m.    Neither the State of New York nor any other government authority has restored the rights of the defendant to lawfully possess a firearm or ammunition.

## III.    SENTENCING GUIDELINES

5.    The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

## BASE OFFENSE LEVEL

6.    The government and the defendant agree that Guidelines § 2K2.1(a)(4)(A) applies to the the offense of conviction and provides for a base offense level of **20**.

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENT

7.    The government and the defendant agree that the following specific offense characteristic does apply:

a.   the two-level (2) increase pursuant to Guidelines § 2K2.1(b)(4)(A) (stolen).

b.   the four-level (4) increase pursuant to Guidelines § 2K2.1(b)(6)(B) (used or possessed in connection with another felony offense).

## ADJUSTED OFFENSE LEVEL

8.    Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offenses of conviction is **26**.

## ACCEPTANCE OF RESPONSIBILITY

9.    At sentencing, the government agrees not to oppose the recommendation that the Court apply the two-level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility), and further agrees to move the Court to apply the additional one-level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of **23**.

## CRIMINAL HISTORY CATEGORY

10.    It is the understanding of the government and the defendant that the defendant's criminal history category is **III**.   The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase.   The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS, AND IMPACT

11.    It is the understanding of the government and the defendant that, with a total offense level of **23** and criminal history category of **III**, the defendant's sentencing range would be a term of imprisonment of **57** to **71** months, a fine of **$20,000** to **$200,000**, and a period of supervised release of **1** to **3** years.    Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the minimum and maximum penalties set forth in ¶ 1 of this agreement.

12.    Notwithstanding the above calculations, it is the agreement of the parties pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure that the Court at the time of sentence impose a sentence of imprisonment of **57** to **71** months, as part of the appropriate sentence in this case. If, after reviewing the presentence report, the Court rejects this agreement, the parties will be relieved of their other obligations under this agreement and the defendant shall then be afforded the opportunity to withdraw the plea of guilty. If, after reviewing the presentence report, the Court rejects this agreement, the government may move to vacate the plea agreement. If the government moves to vacate the agreement, the defendant's plea shall be deemed withdrawn. This agreement does not affect the amount of a fine or the length and conditions of a term of supervised release that may be imposed by the Court at sentencing.

13.    The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

14.     In the event that the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

## IV.     STATUTE OF LIMITATIONS

15.     In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement.   This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V.     REMOVAL

16.     The defendant represents that he is a citizen of the United States.   However, if the defendant is not a citizen of the United States, the defendant understands that, if convicted, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## VI.     GOVERNMENT RIGHTS AND OBLIGATIONS

17.     The defendant understands that the government has reserved the right to:

a.     provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant

concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.      respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.      advocate for a specific sentence consistent with the terms of this agreement; and,

d.      modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor.

18.      At sentencing, the government will move to dismiss the open counts in the Superseding Indictment in this action as against the defendant.

19.      The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VII.   APPEAL RIGHTS

20.      The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed.   The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which includes a sentence of 57 to 71 months and otherwise falls within or is less than the sentencing range for a fine and supervised release set forth in Section III,

¶ **11**, above, notwithstanding the manner in which the Court determines the sentence.    In the event of an appeal of the defendant's sentence by the government, the defendant reserves its right to argue the correctness of the defendant's sentence.

21.    The defendant understands that by agreeing to not collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

22.    The government waives its right to appeal any component of a sentence imposed by the Court which includes a sentence of imprisonment of 57 to 71 months and otherwise falls within or is greater than the sentencing range a fine and supervised release set forth in Section III, ¶ **11**, above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VIII.    FORFEITURE PROVISIONS

23.    The defendant agrees to surrender all of his right, title, and interest in the firearm described below and agrees that the firearm constitutes a nuisance as provided for in New York Penal Law § 400.05 and hereby abandons such property to any agency having custody of the firearm, including, but not limited to Erie County Central Police Services, the United States Probation Office, and any other agency to whom custody is transferred.    The

firearm and ammunition is described as follows: one (1) Smith and Wesson, model SD9VE, semi-automatic 9mm Luger pistol, bearing serial number FYR4197; and ammunition, namely: four (4) .40 S&W caliber rounds labeled "WIN 40S&W"; four (4) .40 S&W caliber rounds labeled "•FC• 40 S&W"; one (1) 9mm LUGER caliber round labeled "FC 9MM LUGER"; two (2) 9mm LUGER caliber rounds labeled "WMA ⊕18"; two (2) 9mm LUGER caliber rounds labeled "F&S 9mm LUGER"; two (2) 9mm LUGER caliber rounds labeled "SPEER 9mm LUGER"; one 9mm LUGER caliber round labeled "BARNES 9mm LUGER +P"; two (2) 9mm LUGER caliber rounds labeled "WIN 9MM LUGER"; and one (1) 9mm LUGER caliber round labeled "•Tulammo 9mm LUGER".

24.    The defendant agrees that the above-described firearm and ammunition is subject to forfeiture and waives any and all statutory and constitutional rights, including, but not limited to, time restrictions and notice provisions with respect to the final disposition or forfeiture of the firearm.   The defendant further agrees to the destruction of the firearm and ammunition.

25.    The defendant agrees that in the event this plea agreement is voided for any reason, the agreement for forfeiture, abandonment, and disposition of the firearm and ammunition survives and shall be given full force and effect.

## IX.   TOTAL AGREEMENT AND AFFIRMATIONS

26.    This plea agreement represents the total agreement between the defendant, **WALTER STEWART**, and the government. There are no promises made by anyone

other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

<div style="margin-left: 40%;">

TRINI E. ROSS
United States Attorney
Western District of New York

BY: _____
SETH T. MOLISANI
Assistant United States Attorney

Dated:   May 25, 2022

</div>

I have read this agreement, which consists of pages 1 through 12.   I have had a full opportunity to discuss this agreement with my attorney, MaryBeth Covert, AFPD.   I agree that it represents the total agreement reached between me and the government.   No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty.   I fully agree with the contents of this agreement.   I am signing this agreement voluntarily and of my own free will.

_____          _____
WALTER STEWART                                          MARYBETH COVERT, AFPD
Defendant                                                          Attorney for the Defendant

Dated:  May 25, 2022                                   Dated:  May 25, 2022